IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16−cv−0519−MJR |
| ) | |
| COOPER, ) | |
| JANA CARIE, ) | |
| HUDLEY, ) | |
| JOHN DOE INTERNAL AFFAIRS ) | |
| OFFICER, ) | |
| STEVEN DUNCAN, ) | |
| S. OCHS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Anthony Williams, an inmate in Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.–** The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.–** On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

>    (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

### The Complaint

In his Complaint (Doc. 1), Plaintiff has alleged that on January 12, 2016, Plaintiff was called for a medical call pass. (Doc. 1, p. 4). Ochs escorted Plaintiff to the health care unit. (Doc. 1, p. 4). When Plaintiff and Ochs reached a blind spot in the hall, Ochs allegedly aggressively grabbed Plaintiff's neck and began to choke him. (Doc. 1, p. 5). He also allegedly told Plaintiff that he (Ochs) could make Plaintiff suck his dick. (Doc. 1, p. 5).

On March 4, 2016, Plaintiff spoke to Defendant Cooper. (Doc. 1 p. 3). Plaintiff had previously submitted numerous transfer requests trying to get himself moved out of Lawrence Correctional Center. (Doc. 1, p. 3). Plaintiff alleges that he asked Cooper what he would have to do to get transferred and Cooper replied that an inmate would have to commit a physical or sexual assault against an employee to get transferred. (Doc. 1 p. 3). Plaintiff was then allegedly placed on investigative status because of this interaction with Cooper. (Doc. 1, p. 3). Plaintiff was subsequently issued a disciplinary report based on the incident, and also based on his cell mate McKnight's testimony that Plaintiff discussed a plan with him to pull the Warden's wife into a closet and beat her up so that Plaintiff could be transferred. (Doc. 1, p. 3). Plaintiff had a hearing before the adjustment committee on April 10, 2016, which was chaired by J. Carie and R. Brown. (Doc. 1, p. 3). Plaintiff pled not guilty and submitted a written statement. (Doc. 1, p. 3-4). Plaintiff attributed the allegedly threatening statements to McKnight. (Doc. 1, p. 4). Plaintiff was found guilty and sentenced to 6 months in segregation, 6 months C-grade, and lost 6 months of good time credit. (Doc. 1, p. 4).

On March 12, 2016, Ochs was again escorting Plaintiff to the shower. (Doc. 1, p. 5). Plaintiff was wearing a pair of boxer shorts. (Doc. 1, p. 5). After Ochs cuffed Plaintiff through the chuck hole, he grabbed Plaintiff "to the door" and "asserted" a finger in Plaintiff's buttocks while making sexually lewd comments. (Doc. 1, p. 5).

Ochs then took Plaintiff to the shower, where Plaintiff requested a crisis team member. (Doc. 1, p. 5). Crisis team member Jane Doe arrived and Plaintiff told her about Ochs' actions. Jane Doe allegedly claimed that she did not know how to fill out a Prison Elimination Rape Act form. (Doc. 1, p. 6). Internal affairs ("IA") was then summoned, but rather than take Plaintiff's complaints about Ochs seriously, IA raised Plaintiff's security status in retaliation. (Doc. 1, p. 6).

Plaintiff is now required to wear a spit shield, hand cuffs, and leg irons, and to be escorted by multiple officers. (Doc. 1, p. 6). Plaintiff claims that the increased security level is retaliation for complaining about Ochs. (Doc. 1, p. 6). Plaintiff also received a disciplinary report for refusing to exit the shower. (Doc. 1, p. 6). Plaintiff denies that he refused a direct order to exit the shower. (Doc. 1, p. 6). On page 9 of Plaintiff's Complaint, he alleges that he was assaulted by K. Moore, a guard who is mentioned nowhere else in the Complaint, and not Ochs. (Doc. 1, p. 9).

Officer Hudley, an officer assigned to Plaintiff's segregation wing, told Plaintiff that he had a morning dental pass on April 5, 2016. (Doc. 1, p. 7). However, after Plaintiff got ready to go to health care, he was told that he could not go because of his elevated security status. (Doc. 1, p. 7). Plaintiff also submitted an affidavit from Harley

Page **4** of **18**

T. Miller that stated that Hudley refused to take Plaintiff on his medical pass after Plaintiff requested that his leg irons be loosened. (Doc. 1, p. 19). Dental staff came by his cell approximately one hour later and told him that they could not treat him because of his elevated security status. (Doc. 1, p. 8). Plaintiff was allegedly in need of follow-up dental care because he had had a bad tooth pulled. (Doc. 1, p. 8). Plaintiff believes an unknown John Doe I. A. officer advised the health care personnel to refuse to treat Plaintiff's condition. (Doc. 1, p. 8).

On April 11, 2016, Hudley allegedly refused to take Plaintiff to attend outdoor recreation by purposefully excluding his name from the yard line list. (Doc. 1, p. 7). Hudley has allegedly denied Plaintiff outdoor exercise for eight weeks. (Doc. 1, p. 7). Plaintiff alleges that this is in retaliation for complaining about Cooper and Ochs verbally to Internal Affairs, and in the form of emergency grievances to the Warden, Steve Duncan. (Doc. 1, p. 7). Plaintiff alleges that his muscles are starting to atrophy due to the lack of physical outdoor exercise. (Doc. 1, p. 7). At another point in his Complaint, Plaintiff inconsistently alleges that he has not been taken for outdoor recreation because of his increased security status. (Doc. 1, p. 9).

Plaintiff alleges that Warden Duncan was made aware of the constant retaliation and other problems because Plaintiff sent him grievances, and that Duncan has ignored Plaintiff's complaints about Cooper, Hudley, Carie and Ochs. (Doc. 1, p. 9).

Plaintiff also alleges that Cooper and Carie acquiesced in the retaliation when they ignored exonerating evidence during Plaintiff's disciplinary hearings. (Doc. 1, p.

Page **5** of **18**

9). Plaintiff alleges that he was issued 10 disciplinary reports between April 12, 2016 and April 22, 2016, all of which were trumped up charges. (Doc. 1, p. 10). Plaintiff was found guilty on all tickets, in part because Cooper and Carie ignored his exonerating evidence. (Doc. 1, p. 10). As a result of all the trumped up charges, Plaintiff has been sentenced to 24 months of segregation, 24 months of C-grade, and lost 24 months of good time credit. (Doc. 1, p. 10)

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into seven counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review.

**Count 1 – Excessive Force against Defendant Ochs for choking Plaintiff on January 12, 2016**

**Count 2: Ochs sexually assaulted Plaintiff in violation of the Eighth Amendment on March 12, 2016**

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review.

**Count 3 – Claim against Jane Doe crisis team member for refusing to assist Plaintiff in reporting his sexual assault pursuant to the Prison Rape Elimination Act on March 12, 2016**

**Count 4- Retaliation claim against unknown internal affairs members who raised Plaintiff's security status in retaliation for Plaintiff's complaints about Cooper and Ochs, causing Plaintiff miss a dental pass and to miss outdoor recreation time, as well as Duncan and Hudley for condoning the retaliation.**

**Count 5-** Deliberate indifference claim against Hudley for cancelling Plaintiff's medical pass to receive follow-up dental care.

**Count 6 –** Retaliation claim against Cooper and Carie ignored exonerating evidence during Plaintiff's disciplinary hearings between April 12, 2016-April 22, 2016

**Count 7-** Cooper retaliated against Plaintiff for engaging in free speech when he wrote Plaintiff a disciplinary ticket on March 4, 2016 for threatening the warden's wife

As to Plaintiff's **Count 1**, it has long been recognized that the "core requirement" of the claim under the Eighth Amendment is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). *See also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). But "not every 'malevolent touch' by a security officer implicates the Constitution." *Lewis v. Downey*, 581 F.3d 467 (7th Cir. 2009) (citing *Hudson*, 503 U.S. at 9). The use of *de minimus* force, for example, is not prohibited under the Eighth Amendment. *Id.* at 9-10. Factors that guide the Court's analysis of whether an officer's use of excessive force was legitimate or malicious are the need for an application of force, the amount of force used, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury suffered by the prisoner. *Hudson*, 503 U.S. at 7; *Hendrickson*, 589 F.3d at 890; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).

The allegations in the Complaint suggest there was no need for the use of force during the January 12, 2016 incident. Plaintiff alleges that he was handcuffed and being

escorted to health care when Ochs began choking and threatening him. If Plaintiff's allegations are true, this is a clear-cut case of excessive force, and the claim will proceed.

The claims regarding the March 12, 2016 incident in **Count 2** are much less clear. When a guard intends to humiliate or gratify himself through an unwanted touching of an inmate's private parts, the intrusion violates the prisoner's Eighth Amendment rights, even if the force that a guard uses is slight. *Washington v. Hively,* 695 F.3d 641, 642–43 (7th Cir. 2012). Sexual offenses can "cause significant distress and often lasting psychological harm." *Id.* at 643.

Plaintiff has alleged Ochs "asserted" a finger in his buttocks. If what Plaintiff is alleging is that he was merely poked with a finger on his buttocks, that application of force would be *de minimis*, but the Seventh Circuit has previously held that if the district court can draw an inference from the complaint that a defendant inserted a digit into the prisoner's anus, that is sufficient to survive threshold review. *Rivera v. Drake*, 497 F. App'x 635, 636 (7th Cir. 2012). Such an inference can be drawn from the Complaint here, and so **Count 2** survives threshold review.

**Count 3** must be dismissed because no court has concluded that the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 et seq., establishes a private right of action. *Amaker v. Fischer,* 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014). *See Also Krieg v. Steele,* 599 F. App'x 231, 232 (5th Cir.2015) (citing cases); *Collen v. Yamaoka*, No. CIV. 14-00577 SOM, 2015 WL 793085, at *3 (D. Haw. Feb. 25, 2015) (citing cases); *Porter v. Jennings,* 2012 WL 1434986, at *1 (E.D.Cal. Apr. 25, 2012) (citing cases). This Court has

Page **8** of **18**

likewise previously determined that the act does not contain a private right of action. *Ross v. Gossett*, No. 15-CV-309-SMY-PMF, 2016 WL 335991, at *4 (S.D. Ill. Jan. 28, 2016). Plaintiff's claim that staff refused to help him make a report pursuant to the Prison Rape Elimination Act must therefore be **DISMISSED with prejudice**.

Plaintiff has attempted to state a retaliation claim against both Hudley and unknown IA officers in **Count 4**. He has further implicated Warden Duncan in this claim by alleging that the Warden acquiesced in the relevant conduct. This claim will be **DISMISSED without prejudice**. Plaintiff alleges that Internal Affairs officers retaliated against him for making complaints against Ochs by adjusting his security status so that he cannot attend yard. Although Plaintiff's Complaint makes the allegation several times against unknown IA officers, he also blames his loss on Hudley. But Plaintiff has not adequately pleaded a retaliation claim against either.

An inmate has a constitutional right to file a grievance as part of his right of access to the courts under the First Amendment. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). To succeed on a First amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a

"motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Here Plaintiff has not alleged that he filed any grievances on Ochs. While he has filed a grievance on Cooper, (Doc. 6), he has not alleged that any of the Defendants knew about it, and it is clear from the face of that grievance that Duncan did not review it until May 11, 2016—the day Plaintiff filed this Complaint. That grievance cannot be the basis of a retaliation claim against Duncan if he did not have notice of it prior to Plaintiff filing the Complaint. Plaintiff has alleged that he complained about Ochs on March 12, 2016, but that is not sufficient to state a claim. *Bridges v. Gilbert*, 557 F.3d 541, 554 (7th Cir. 2009).

He has also not provided facts regarding when his security level was increased. He has not provided facts tending to show that the unknown John Doe officers to whom he complained about Ochs are the same officers who raised his security status. He had not pleaded that he complained about Ochs or Cooper to Hudley or that Hudley knew that he had complained about Ochs or Cooper. There are not enough facts to make Plaintiff's claims that retaliation was the "motivating factor" for his increased security status plausible.

Plaintiff's Complaint rests on his own speculation that someone is retaliating against him, because certain members of the prison staff are depriving him of privileges. Plaintiff's allegations are equally as consistent with his exhibits, although contested, which suggest that Plaintiff's security status was raised because he attempted

to assault staff. Plaintiff has not pleaded sufficient facts to suggest that he engaged in protected conduct or that the conduct was the motivating factor in retaliation. As Plaintiff has not pleaded sufficient facts to make his claims of retaliation plausible, his claim that the Warden failed to intervene in the retaliation also fails. This claim shall be **DISMISSED without prejudice** for failure to state a claim.

As to Plaintiff's **Count 5**, that claim also merits dismissal. In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).

A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Id.*

Here Plaintiff has pleaded that he recently had a bad tooth pulled. Plaintiff thus argues that since he had a serious medical need in the form of a bad tooth, he continues to suffer from a sufficiently serious medical need, even after the tooth was pulled. That does not follow, and Plaintiff has not identified the current condition for which he needs treatment. Plaintiff has not identified what treatment he did not receive on April 5, 2016.

Additionally, even if Plaintiff had identified a condition, Plaintiff has not stated a claim against Hudley. Plaintiff alleges that Hudley failed to take him to health care because his security status was increased. Plaintiff's allegations are contradicted by an affidavit that he submitted in support of his Complaint, in which his witness swears that Plaintiff was not taken to health care because Plaintiff requested that his leg irons be loosened, not because of his security status. Plaintiff is not entitled to demand that he be taken to health care on his own terms. And Plaintiff has alleged that the medical staff actually came by his cell later after his pass was cancelled to discuss his tooth him. Plaintiff has alleged they decided not to treat him, but Hudley was entitled to rely on the medical provider's decision in that regard. *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013).

Plaintiff also alleges that unknown internal affairs officers told the dental staff not to treat him, but that claim once again rests on nothing but speculation and conjecture. Even if it did not, **Count 5** still fails to state a claim because Plaintiff has not adequately pled that he suffers from a serious medical condition.

Plaintiff's **Count 6** alleges that Cooper and Carie "acquiesced" in the retaliatory conduct of others when refused to consider Plaintiff's exonerating evidence in his various disciplinary hearings. It is well established that "[f]or constitutional violations under § 1983 . . . a government official is only liable for his or her own misconduct." E.g., *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015). Here, Plaintiff appears to citing to the Seventh Circuit's holding in *Vance v. Peters*, that an official may be liable where he knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye. 97 F.3d 987 992-93 (7th Cir. 1996).

Once again, it is not clear that Plaintiff's comments regarding Ochs actually state a retaliation claim because Plaintiff has not been specific enough about what those comments were. Even putting that to one side, Plaintiff has not pleaded here that Cooper or Carie knew other staff were retaliating against Plaintiff for reporting Ochs. Instead, he has alleged that they knew that Plaintiff's disciplinary reports were false. Plaintiff has not explained which tickets were specifically false or how Cooper or Carie knew those tickets were false. In fact, the tickets he has attached to his Complaint as exhibits show that Cooper and Carie did not hear a single ticket together, meaning that there was always at least one "neutral" vote during Plaintiff's adjustment committee hearings. Moreover, the incident officers include officers who are not defendants here, and therefore not part of Plaintiff's retaliation allegations. Thus it is not clear how Cooper and Carie could have acquiesced in retaliation, when they heard tickets individually and those tickets came from multiple officers whom Plaintiff has not

accused of retaliation. Plaintiff has not adequately pleaded a retaliation claim because his allegations that Cooper and Carie acquiesced in others' retaliation by finding him guilty are not plausible.

Moreover, to the extent that Plaintiff is actually alleging that Cooper and Carie violated his due process rights when they ignored Plaintiff's exonerating evidence, due process only requires that "some evidence" support the decision of the adjustment committee. *Pardo v. Garnett*, 132 F. App'x 648, 651 (7th Cir. 2005). Plaintiff has not alleged that no evidence supported the determination. Therefore his claims against Cooper and Carie for their parts in Plaintiff's adjustment committee hearings must be **DISMISSED without prejudice**.

The Court must also dismiss **Count 7**[1]. Plaintiff alleged in his Complaint that he lost 6 months of good time credit as a result of the discipline he received stemming from the incident with Cooper. Plaintiff's claim is barred by *Heck v. Humphrey* 512 U.S. 477 (1994). In *Heck*, the Supreme Court stated that a prisoner's § 1983 is not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487**.** Thus, a prisoner's claim for damages is barred unless the prisoner can demonstrate the conviction or sentence has previously been invalidated. The Supreme Court extended the *Heck* doctrine to civil rights claims

---

[1] Plaintiff also filed an exhibit on May 25, 2016, containing a grievance addressing this same incident. (Doc. 6). The grievance is signed by the warden, and the signature is dated May 11, 2016. As the final step of the grievance process is to submit the grievance to the Administrative Review Board, and Plaintiff filed this case the same day the grievance was rejected by the warden, the Court thinks it very likely that Plaintiff has failed to exhaust his administrative remedies as well as to this claim.

arising out of prison disciplinary hearings. *Burd v. Sessler*, 702 F.3d 429, 434 (7th Cir. 2012) (citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[R]espondent's claim[s] . . . that necessarily imply the invalidity of the punishment imposed, [are] not cognizable under § 1983."). Plaintiff must therefore seek restoration of his good-time credit prior to bringing an action for damages in this court.

The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 Illinois Compiled Statutes 5/14-101 *et seq.*, to consider the merits of Plaintiff's claim. Accordingly, this claim is dismissed without prejudice to Plaintiff bringing his claims in a properly filed action, ***but only after he has exhausted his state court remedies***.

## Pending Motions

Plaintiff has filed a motion for leave to proceed in forma pauperis and a request for appointment of counsel. (Doc. 2) However, since filing that motion, Plaintiff has tendered the full filing fee to the Court. Plaintiff's request to proceed IFP is therefore **MOOT**. The request for appoint of counsel is referred to Magistrate Judge Williams for disposition. (Doc. 2).

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 3** fails to state a claim upon which relief may be granted and is **DISMISSED with prejudice**. It is further order that **COUNTS 4** through **7** fail to state a claim upon which relief may be granted, and thus are **DISMISSED** without prejudice. Defendant Jane Doe crisis team member is **DISMISSED with prejudice**. Defendants **Cooper, Hudley, Duncan, Curie, and unknown internal affairs officers** are **DISMISSED** from this action without prejudice.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendant Ochs: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be

retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b)

**IT IS SO ORDERED.**

**DATED: June 20, 2016**

s/ MICHAEL J. REAGAN
**U.S. Chief District Judge**